ORDERED.

Dated:  October 28, 2021

*Roberta A. Colton*
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:

Jack Alexander Pearson and
Kaitlyn Brittany Pearson,

    Debtors.
_____/

Case No. 8:20-bk-02318-RCT
Chapter 7

Gabriel L. Diaz-Saavedra,

    Plaintiff,

v.

Jack Alexander Pearson and
Kaitlyn Brittany Pearson,

    Defendants.
_____/

Adv. No. 8:20-ap-00358-RCT

## MEMORANDUM DECISION AND ORDER
## DETERMINING THAT DEBT HAS BEEN DISCHARGED

This proceeding came before the Court for a trial on October 25, 2021 on Plaintiff Gabriel L. Diaz-Saavedra's Amended Complaint.[1]  Plaintiff seeks a declaration that his state court judgment is non-dischargeable under 11 U.S.C. § 523(a)(2)(B).  As explained below, the Court finds that the judgment debt has been discharged.

---

[1] Doc. 17.

**Background**

Plaintiff is a former landlord of Defendant-Debtors, Jack and Kaitlyn Pearson ("Debtors"), for residential real property located at 4316 37th Street E, Bradenton, Florida 34208 (the "Property"). Plaintiff leased the Property to Debtors for a one-year term beginning on February 1, 2018.[2] Prior to the expiration of the lease, Plaintiff sued Debtors in state court for eviction and damages, and Plaintiff obtained a judgment against them for $5,620.73, plus interest.[3] Thereafter, Debtors filed for bankruptcy relief under Chapter 7. Debtors received their general discharge on December 4, 2020.

Plaintiff timely filed this adversary proceeding objecting to the dischargeability of his judgment and argues that the written financial information provided by Debtors—before the lease was signed—was materially false.

**Findings of Fact**

On January 6, 2018, Debtors completed and signed a rental application to lease the Property (the "Rental Application").[4] Shortly thereafter, Debtors paid an $850 security deposit and signed an agreement to lease the Property from Plaintiff.[5]

On the Rental Application, Debtors listed their employment and monthly income. Mrs. Pearson[6] was a stay-at-home mom and student prior to July of 2017, when she became employed as a leasing consultant, making $1,920 per month, plus bonuses that varied.[7] Mr. Pearson had two jobs; he had been employed as a security guard with Gulfside Protective Services since 2016, making $800 per month, and he also became employed as a security guard with Peppertree Bay

---

[2] Pla. Ex. 2, Doc. 69-2.
[3] Pla. Ex. 5, Doc. 69-5.
[4] Pla. Ex. 1, Doc. 69-1.
[5] Pla. Ex. 2, Doc. 69-2.
[6] At the time Debtors submitted the Rental Application, Mrs. Pearson had not yet married Mr. Pearson, so she is listed on the application as Kaitlyn Hilderbrand.
[7] Pla. Ex. 1, Doc. 69-1.

Condominiums in June of 2017, making $1,800 per month.[8]

The Rental Application also asked Debtors to "[l]ist all credit obligations with minimum monthly payment."[9] Debtors responded that they paid $130 per month to Aarons.[10] At trial, evidence was presented that Debtors listed three other debts on their 2020 bankruptcy schedules that arose prior to January of 2018.[11] These debts were not listed on the Rental Application. However, no evidence was presented that any of these three debts had minimum monthly payments as of January 2018.

The Rental Application disclosed that Mrs. Pearson was pregnant with Debtors' second child and that the birth was expected the following month.[12] Debtors agreed that the information in the Rental Application was true and complete, and they further consented to Plaintiff obtaining their credit reports.[13]

Plaintiff called the listed employers to confirm Debtors' employment, though he was unable to confirm salary information. That was the extent of Plaintiff's investigation. Plaintiff failed to ask for or obtain a credit report or background check.

Plaintiff leased the Property to Debtors for a one-year term beginning on February 1, 2018.[14] However, on January 31, 2018, Debtors' second child was born prematurely via C-section. At that point, Mrs. Pearson substantially stopped working to care for her newborn child. Shortly thereafter, Mr. Pearson lost one of his two jobs. Both events occurred weeks after Debtors

---

[8] Pla. Ex. 1, Doc. 69-1.
[9] Pla. Ex. 1, Doc. 69-1.
[10] Pla. Ex. 1, Doc. 69-1.
[11] Pla. Ex. 6, Doc. 69-6. The three debts not listed on the Rental Application are a $66 debt owed to Capital One credit card, a $61 debt owed to Choice Recovery (described as a medical collection debt), and a $1,279 debt owed to ARS Account Resolution (described as a collection debt for emergency services). Mr. Pearson admitted at trial that he did not disclose on the Rental Application that he had owed his grandmother $5,000, nor did he list that debt on his bankruptcy schedules. Mr. Pearson also testified that he never paid any money towards the debt he owed to his grandmother.
[12] Pla. Ex. 1, Doc. 69-1.
[13] Pla. Ex. 1, Doc. 69-1.
[14] Pla. Ex. 2, Doc. 69-2.

completed the Rental Application.

**Discussion**

Plaintiff argues that his judgment is non-dischargeable under 11 U.S.C. § 523(a)(2)(B), because the lease (and the resulting judgment debt) was obtained based on materially false statements regarding Debtors' financial condition in the Rental Application.

In considering the relief Plaintiff seeks, the Court is mindful of the following:

> Creditors bear the burden of proof of establishing exceptions to discharge under § 523 by a preponderance of the evidence. Courts narrowly construe exceptions to discharge to allow the "honest but unfortunate debtor" to receive their statutorily prescribed fresh start. Accordingly, if a court determines a debt is non-dischargeable the reasons "must be real and substantial, not merely technical and conjectural." "[I]f there is room for an inference of honest intent, the question of non-dischargeability must be resolved in favor of the debtor."[15]

Specifically, to establish a non-dischargeable debt under § 523(a)(2)(B), Plaintiff must show that the judgment debt resulted from: (1) a materially false written statement; (2) respecting Debtors' financial condition; (3) made by Debtors with an intent to deceive; (4) on which Plaintiff reasonably relied. Plaintiff contends that Debtors made two materially false statements—one regarding their income and one regarding their credit obligations. As explained below, Plaintiff failed to prove that any statement was materially false or made with intent to deceive. Plaintiff further failed to prove reasonable reliance.

*Statements Regarding Monthly Income*

Debtors' statements regarding their monthly income were substantially true when they signed the Rental Application. Indeed, the tax information offered by Plaintiff in support of his claim actually verifies the substantial accuracy of the income information provided by Debtors.[16]

---

[15] *Criswell Chevrolet, Inc. v. Prifti (In re Prifti)*, Adv. No. 8:21-ap-00055-RCT, 2021 WL 3629313, at *2 (Bankr. M.D. Fla. Aug. 16, 2021) (internal footnotes with citations omitted).
[16] Pla. Ex. 10, Doc. 69-10; Pla. Ex. 12, Doc. 69-12.

The Rental Application states that in 2017, Mr. Pearson had earned $800 per month for 12 months from Gulfside Protective Services, and $1,800 per month for approximately 6 months from Peppertree Bay Condominiums, collectively totaling $20,400.[17] Mr. Pearson's 2017 tax return reflects wages of $20,269.[18]

Likewise, Mrs. Pearson's income information in the Rental Application was consistent with her 2017 tax information. The Rental Application states that she made $1,920 per month (plus bonuses in varying amounts) for approximately 6 months, totaling $11,520.[19] Mrs. Pearson's corrected 2017 tax return reflects income of $16,675.[20] If anything, Mrs. Pearson slightly understated her then current income on the Rental Application.

Because the income information was substantially true when made, it is not surprising that Plaintiff offered no evidence that Debtors intended to deceive him, other than the fact that Plaintiff obtained a judgment for breach of the lease.

*Statement Regarding Credit Obligations*

Similarly, Debtors' statement regarding their credit obligations was not materially false nor was it intended to deceive Plaintiff.[21] And further, Plaintiff's alleged reliance was not reasonable.

First, the question on the Rental Application asking Debtors to "[l]ist all credit obligations with minimum monthly payment" is both vague and confusing. Plaintiff's argument that this question should have prompted disclosure of Mr. Pearson's debt to his grandmother (for which he has made no payments) is rejected. Debtors credibly testified that they believed that they were to disclose obligations that required them to make a minimum monthly payment. They accurately

---

[17] Pla. Ex. 1, Doc. 69-1.
[18] Pla. Ex. 10, Doc. 69-10.
[19] Pla. Ex. 1, Doc. 69-1.
[20] Pla. Ex. 10, Doc. 69-10.
[21] Although not specifically pled in Plaintiff's Amended Complaint, the issues related to the credit obligations were fully considered at trial at Plaintiff's request.

5

disclosed that they were making monthly payments of $130 to Aarons.

Second, Plaintiff's testimony that he would not have leased the Property if he had known about these non-disclosed debts was not credible. In his testimony, Plaintiff tries to suggest that he was particularly disturbed by the debt to Capital One. The debt to Capital One was $66.

Third, if Plaintiff was at all concerned about Debtors' credit history, there is no excuse for his failure to obtain their credit reports before leasing the Property. Plaintiff's reliance solely on the Rental Application was not reasonable.

In making this finding, the Court is guided by the following:

> Section 523(a)(2)(B) requires the creditor to prove that it reasonably, as opposed to justifiably, relied on the written statement at issue. . . . Whether a creditor's reliance was reasonable is a factual determination to be made in light of the totality of the circumstances. Among the circumstances that might affect the reasonableness of a creditor's reliance are (1) whether the creditor had a close personal relationship or friendship with the debtor; (2) whether there had been previous business dealings with the debtor that gave rise to a relationship of trust; (3) whether the debt was incurred for personal or commercial reasons; (4) whether there were any "red flags" that would have alerted an ordinarily prudent lender to the possibility that the representations relied upon were not accurate; and (5) whether even minimal investigation would have revealed the inaccuracy of the debtor's representations.[22]

Here, even a minimal investigation (*i.e.*, a credit report) or clearer questions on Plaintiff's Rental Application would have provided Plaintiff with a more complete picture of Debtors' financial situation. Debtors consented to a credit report in the Rental Application, and they also provided a security deposit for one months' rent.

Unfortunately, Debtors' circumstances changed precipitously after the Rental Application was signed. Plaintiff is understandably upset that Debtors defaulted on the lease. But Plaintiff has

---

[22] *Lease Corp. of Am. v. Harloff (In re Harloff)*, 272 B.R. 496, 499–500 (Bankr. M.D. Fla. 2001) (internal citations omitted).

failed to establish the elements necessary to declare the judgment debt non-dischargeable under 11 U.S.C. § 523(a)(2)(B).

### Costs and Attorney's Fees

Pursuant to 11 U.S.C. § 523(d), if a creditor requests a determination of dischargeability of a consumer debt and the court finds the debt to be dischargeable, "the court shall grant judgment in favor of the debtor[s] for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified." There is an exception in § 523(d), "if special circumstances would make the award unjust." In their Answer to Plaintiff's Amended Complaint, Debtors ask the Court for an award of attorney's fees.[23]

The Court finds that Plaintiff's position in this adversary proceeding was not substantially justified. There was little to no evidence of any material misrepresentation, intent to deceive, or reasonable reliance. Accordingly, it is

**ORDERED:**

1. Debtors are entitled to a Judgment that the debt owed to Plaintiff is discharged. The Court will enter a separate judgement consistent with this Order.

2. Debtors shall file any request for fees and costs pursuant to § 523(d) within 14 days after the date of this Order. If such a request is filed by Debtors, Plaintiff shall have 14 days to respond to the request, after which time the Court will take the matter under advisement. The Court reserves the right to set a hearing on any request in its discretion.

Service of this Order other than by CM/ECF is not required. Local Rule 9013-3(b).

---

[23] Doc. 30.